This suit is before the court on motions to discharge an order to show cause restraining defendant from prosecuting an ejectment suit, to strike the bill of complaint on the ground that it does not set forth a cause of action, and the further ground that there is a defect of parties, and to require complainant, if the bill be not stricken, to furnish a bill of particulars.
As it appears, partly from the bill and partly from the affidavits submitted on the motions, complainant, in 1933, was the owner of five mortgages on various parcels of property. One Carleton T. Lum was in control of a greenhouse business, incorporated as Lum Bros., Inc. Complainant was in some way interested with him in the business, either as a stockholder or otherwise. This corporation went into receivership. Its assets were sold and acquired under some arrangement with Lum and a new corporation was organized, which was controlled by Lum, and the business was continued under the name of Carleton T. Lum, Inc. A certificate of incorporation of Carleton T. Lum, Inc., was filed in the county clerk's office on May 8th, 1934, and in the office of the Secretary of State on May 9th, 1934. Complainant never was a stockholder in Carleton T. Lum, Inc.
In 1932, Carleton T. Lum discounted with defendant a note made by complainant and endorsed by him in the amount of $2,500. Payments on account of this note were made from time to time and the note renewed for the balance then remaining, and there is still due the sum of $1,000 thereon. In November, 1933, Lum stated to an officer of defendant that Lum Bros., Inc., was about to go into receivership and that he intended to acquire its assets and continue the business, and wished to secure a loan from the defendant for that purpose. At that time Lum Bros., Inc., was indebted to the defendant in the sum of $6,000. He was informed that no *Page 193 
new loan would be made unless he personally assumed the $6,000 debt and provided security, not only for the new loan but also for the $6,000 debt, and the $2,500 note made by complainant, of which he was an endorser. Thereafter, Lum produced assignments from complainant to him of the five mortgages above referred to and he, in turn, assigned the five mortgages to defendant as collateral security for the $2,500 note, a note for the $6,000 obligation assumed by him, and for any further loans which might be made for the purpose of effecting the transfer of the business from the receiver to the new corporation. On November 13th, 1933, a loan was made to him of $3,000 on his note in the sum of $3,000 endorsed by complainant. Thereafter, Lum assigned the five mortgages in form of absolute assignment to defendant. On February 13th, 1934, when the note for $3,000 came due it was renewed by a like note made by him and endorsed by complainant. Upon the completion of the organization of the new corporation, Lum executed a note for the $6,000 debt of the old corporation assumed by him, and he secured a new loan in the sum of $4,500, for which he executed his note. The loan of $3,000 and the one of $4,500 were consolidated into one loan of $7,500, which was executed by the new corporation, Carleton T. Lum, Inc. The note was endorsed by Lum individually but not by complainant, who thereby was released on the $3,000 note, of which she had been endorser. The mortgages were assigned back to Lum by defendant, who assigned them to the new corporation, which, in turn, assigned them to defendant. Certain payments had been made from time to time on the $6,000 personal note by Lum, and on the $7,500 corporation note, and there is due and unpaid approximately the sum of $7,000 on these two notes, besides the $1,000 still due on the original $2,500 note made by complainant. Three of the five mortgages were sold by defendant, with the knowledge and consent of Lum, and the proceeds applied on account of various of the notes and at least in part on complainant's note.
In 1943 the $7,500 note had been substantially reduced, and, because of this, the remaining mortgages were reconveyed by the corporation to Lum, who, in turn, assigned them to *Page 194 
defendant, so that they were again restored to the condition at the time of the original assignment.
The substance of complainant's case is in the allegations that her mortgages were assigned to defendant through Lum solely for the purpose of securing new loans to the new corporation, and that defendant fraudulently took and held the mortgages as security for prior loans as well. Defendant flatly denies this alleged fraudulent misappropriation of the mortgages. It states that so far as it ever knew the mortgages were the individual property of Lum, and that it had no knowledge of any claim of complainant to them. All the dealings in regard to the mortgages were conducted through Lum, and the only personal contact between complainant and defendant seems to have consisted of an inquiry by her as to how Lum was getting along with payments to the defendant. Defendant gives a logical and apparently straightforward account of the transactions relating to the mortgages; namely, that when Lum wished to secure new loans in order to reorganize the first corporation they required that he personally assume its debt to the defendant and put up security for these obligations, as well as for his personal obligations, on which complainant was also liable, before a new loan was made. As far as the injunction pendente lite is concerned, complainant has not made out sufficient of a case to entitle her to the continuance of the restraint. Her affidavit consists substantially of nothing except the bare assertion of fraudulent misappropriation by the defendant of the mortgages without any corroboration and without any details showing any misconduct by defendant. It may be that Lum deceived her as to the purpose for which the mortgages were to be used, but there is nothing to connect defendant with any possible fraud that Lum may have committed on her. Under these circumstances, an injunctionpendente lite is to be denied.
As to the motion to dismiss the bill for lack of equity the bill must be retained. The allegations of the bill do state what amounts to a good cause of action against defendant by setting forth in substance that defendant took the assignment of the mortgages on the agreement that they were to be used *Page 195 
solely for the purpose of securing further loans, and that in violation of this agreement defendant used them for other purposes. It is highly probable that complainant could not sustain these allegations, in view of the facts set forth in the affidavit submitted, but complainant has the technical right of going to final hearing, since the issues raised by these allegations cannot be determined on affidavits.
The other defect in the bill of complaint is, however, in my opinion, fatal. It seems clear that Lum had an interest in the mortgages, which, on complainant's own statements, were given to him for the purpose of financing the new corporation. He was the holder of legal title and is a necessary party to the determination of his rights, as well as those of complainant and defendant therein.
The rule is that persons interested in the object of a suit must be made parties. Since they are parties to the interest involved in the issue, they must necessarily be affected by the decree. Fletcher v. Newark Telephone Co., 55 N.J. Eq. 47.
In the absence of Lum as a party the bill must be dismissed.
In view of the dismissal of the bill, it is unnecessary to consider the question as to whether complainant should be required to furnish a bill of particulars.