# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

SHAREHOLDER REPRESENTATIVE
SERVICES LLC, as representative of
the stockholders and optionholders of
Radixx Solutions International, Inc.,

   Plaintiff/Counterclaim
   Defendant,

  v.

RSI HOLDCO, LLC and
TA XII-A, L.P.,

   Defendants/Counterclaim
   Plaintiffs.

RSI HOLDCO, LLC and
TA XII-A, L.P.,

   Third-Party Plaintiffs,

  v.

RONALD J. PERI, JAMES L.
JOHNSTON, THOMAS R.
ANDERSON, DENIS P. COLEMAN,
and JUDI LOGAN,

   Third-Party Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2018-0517-KSJM

## MEMORANDUM OPINION

Date Submitted: February 21, 2019
Date Decided: May 22, 2019

Rudolf Koch, Susan M. Hannigan, Matthew W. Murphy, RICHARDS, LAYTON &
FINGER, P.A., Wilmington, Delaware; Christopher F. Robertson, Alison K. Eggers,
SEYFARTH SHAW LLP, Boston, Massachusetts; *Counsel for Shareholder
Representative Services LLC, Ronald J. Peri, James L. Johnston, Thomas R.
Anderson, Denis P. Coleman, and Judi Logan*.

John P. DiTomo, Jarrett W. Horowitz, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Roberto M. Braceras, Adam Slutsky, Ezekiel L. Hill, GOODWIN PROCTER LLP, Boston, Massachusetts; *Counsel for RSI Holdco, LLC and TA XII-A, L.P.*

**McCORMICK, V.C.**

In September 2016, RSI Holdco, LLC acquired Radixx Solutions International, Inc. ("Radixx"). The merger agreement provided for a $9 million "holdback amount" to account for post-closing indemnification and set-off claims. An entity designated by the merger agreement as the selling stockholders' representative, Shareholder Representative Services LLC ("Representative"), commenced this litigation to recover the holdback amount. In response, the acquirer counterclaimed that Radixx's founder fraudulently induced the merger. As relief, the acquirer seeks in part to rescind the merger agreement. It also brought a third-party claim for unjust enrichment against five (of over one hundred) of the selling stockholders. Representative and the five selling stockholders named as third-party defendants have moved for partial dismissal of the request for rescission and unjust enrichment claim.

In requesting to rescind the merger, acquirer and its affiliate ask this Court to undo the merger agreement. Generally, a litigant seeking to rescind an agreement must join in the lawsuit all parties to that agreement. In this case, the acquirer argues that it need not join each Company Holder to the litigation; it need only sue Representative to achieve rescission. This argument ignores that Representative's authority flows from and is limited by the merger agreement, and a claim for rescission falls outside of the merger agreement's four corners. The acquirer cannot seek a remedy outside of the merger agreement from Representative, whose

1

representation is solely limited to matters arising under the four corners of that agreement. Thus, the acquirer's request for rescission is dismissed, but without prejudice to permit the absent sellers to be joined as parties.

The unjust enrichment claim survives the partial motion to dismiss. Although generally, an unjust enrichment claim cannot lie when a contract governs the parties' relationship, in this case, the acquirer claims that the merger agreement arose from fraud and thus does not govern the parties' relationship. Accordingly, the claim for unjust enrichment may proceed.

## I.    FACTUAL BACKGROUND

The facts are drawn from the Verified Counterclaims and Third-Party Complaint,[1] the documents incorporated by reference therein, and matters not subject to reasonable dispute, including allegations admitted in the non-movants' Answer and Affirmative Defenses.[2]

---

[1] C.A. No. 2018-0517-KSJM Docket ("Dkt.") 13 pp. 65–95, Verified Countercls. and Third-Party Compl. ("Third-Party Complaint").

[2] Dkt. 13 pp. 1–64, Answer and Affirmative Defenses ("Answer").

## A.    Events Leading to This Litigation

Radixx is a cloud-based provider of travel distribution and passenger service system software.[3]    Ronald J. Peri founded Radixx and served as its CEO until November 2016.[4]

In September 2016, RSI Holdco, LLC ("Holdco") acquired Radixx from its more than one hundred stockholders (the "Company Holders") pursuant to an Agreement and Plan of Merger (as amended, the "Merger Agreement").[5]  Under the Merger Agreement, Holdco agreed to pay a nominal amount of $120 million.  The Merger Agreement reduced that nominal amount by applying multiple purchase price adjustments,[6] to exclude consideration attributable to a portion of Peri's equity that would be rolled-over into the new entity,[7] and to "holdback" $9 million (the "Holdback Amount") to account for post-closing indemnification and set-off

---

[3] Answer ¶ 10; *see also id.* at 2 (Preliminary Statement).

[4] Third-Party Compl. ¶ 9.

[5] Dkt. 2, Verified Compl. ("Compl.") Ex. A, Agreement and Plan of Merger; Dkt. 4, Compl. Ex. G, Ex. 2, Amendment to Agreement and Plan of Merger.

[6] The Merger Agreement provided purchase price adjustments for closing indebtedness, transaction expenses, working capital surplus, working capital deficit, and the excess of a closing cash target over the closing cash.  Merger Agreement § 2.06.

[7] *See* Answer ¶ 16; Third-Party Compl. ¶ 9.

claims.[8]   Accounting for these reductions, at closing, Holdco paid approximately $86.4 million.[9]

TA XII-A, L.P. ("TA") owns and operates Holdco.   With the Merger Agreement, TA executed a Guaranty dated as of September 19, 2016 ("Guaranty") in favor and for the benefit of the Company Holders.[10]   Through the Guaranty, TA promised "the full and punctual payment of the Holdback Amount required to be paid by [Holdco] and [Radixx] in accordance with Section 3.01 of the Merger Agreement," subject to the terms of the Merger Agreement.[11]

Post-closing, the parties disputed purchase price adjustments.   As required by the Merger Agreement, Holdco and Representative submitted the dispute to an accountant for arbitration.   In November 2017, the arbitrator issued its report, awarding a post-closing purchase price adjustment of $1,008,114 in Holdco's favor.[12]   On January 30, 2018, Holdco filed a complaint in this Court against Representative and all of the Company Holders seeking payment of the arbitrator's award as well as "'undisputed amounts' of $762,597" in purchase price

---

[8] Merger Agreement § 3.01(a).

[9] Answer ¶ 16.

[10] Dkt. 2, Compl. Ex. B.

[11] *Id.* § 1 (underlining in original).

[12] Dkt. 6, Compl. Ex. J, at 5.  In December 2017, the arbitrator issued a revised report, but it did not change the post-closing purchase price award.  *See* Dkt. 6, Compl. Ex. L, at 5.

4

adjustments.[13] Holdco voluntarily dismissed the action after Representative and the Company Holders made payments to Holdco.

The voluntary dismissal of the purchase-price adjustment action did not end the parties' post-closing disputes. Under the Merger Agreement, Holdco was scheduled to pay the Holdback Amount to the Company Holders in March 2018, subject to any then-pending indemnification claims and proposed set-offs.[14] A few weeks before the deadline, Holdco submitted to Representative a "Claim Certificate" asserting breaches of representations and warranties in the Merger Agreement and indemnification claims.[15] The Claim Certificate "estimate[d] that these indemnifiable Losses and fraud claims will greatly exceed the $9,000,000 Holdback Amount" and stated that the Holdback Amount would be retained in full.[16] Representative objected to Holdco's Claim Certificate, asserting that it was "procedurally and substantively deficient" and sought "recovery for alleged losses already adjudicated by the [arbitrator] . . . ."[17] In its objection, Representative further

---

[13] *See* Answer ¶¶ 54–55, 58–59; *see generally* C.A. No. 2018-0071-AGB, Dkt. 1, Verified Compl. (Del. Ch. Jan. 30, 2018). The Answer and the Third-Party Complaint provide scant information regarding the $762,597 amounts alleged to be owed by Representative and the Company Holders. *See* Answer ¶¶ 54–55, 58–59; Third-Party Compl. ¶¶ 81–82. On the record before this Court, it is not clear whether these amounts were at issue and resolved in the arbitration.

[14] *See* Merger Agreement §§ 1.01, 3.01.

[15] Answer ¶¶ 78, 80.

[16] Dkt. 6, Compl. Ex. M.

[17] Dkt. 6, Compl. Ex. N, at 1; *see also* Answer ¶ 88.

5

asserted that Holdco had "affirmatively breached Article 9 of the Merger Agreement relating to tax returns and tax refunds and credits . . . ."[18]

Holdco continues to withhold the Holdback Amount.[19] TA, as guarantor, has likewise not paid the Holdback Amount.[20]

## B. This Litigation

On July 17, 2018, Representative commenced this litigation against Holdco and TA.[21] Representative asserts three breach of contract claims, two relating to the Holdback Amount and one claiming that Holdco breached portions of the Merger Agreement relating to Radixx's 2016 tax returns.[22]

On August 20, 2018, Holdco and TA answered Representative's complaint and asserted their third-party claims. Holdco and TA name as defendants Representative and five Company Holders: Peri, James Johnston, Thomas Anderson, Denis Coleman, and Judi Logan.[23] Holdco and TA assert three causes of action against Representative and these individuals.[24] Count I claims that Peri fraudulently induced Holdco, TA, and TA's affiliate TA Associates Management

---

[18] Compl. Ex. N, at 7.

[19] *See* Answer ¶ 3.

[20] *Id.* ¶¶ 93–94.

[21] *See generally* Dkt. 1, Compl.

[22] *Id.* ¶¶ 142–56.

[23] Third-Party Compl. ¶¶ 9–13.

[24] *Id.* ¶¶ 83–103.

6

L.P. to close the merger by misrepresenting material facts.[25]  Count II claims that the Company Holder defendants were unjustly enriched by the merger consideration.[26] Count III claims breaches of the Merger Agreements' representations and warranties and as a result of the Company Holders' failure to pay $762,597 in purchase price adjustments.[27]

On October 5, 2018, Representative and the Company Holder defendants moved for partial dismissal of the Third-Party Complaint.[28]  The parties completed briefing on the motion for partial dismissal on November 20, 2018,[29] and the Court heard oral arguments on February 21, 2019.

## II.  LEGAL ANALYSIS

Pursuant to Court of Chancery Rule 12(b)(6), Representative and the Company Holder defendants (together, "Movants") seek dismissal of the portion of

---

[25] *See id.* ¶¶ 83–89.

[26] *See id.* ¶¶ 90–97.

[27] *See id.* ¶¶ 81–82, 98–103.

[28] Peri answered the Third-Party Complaint and joined in Representative's and the other Company Holder defendants' motion for partial dismissal.  Dkt. 20, Third Party Def. Ronald Peri's Answer to Verified Third-Party Compl. of Countercl. Pls. and Third-Party Pls.; Dkt. 21, Countercl. and Third-Party Defs.' Partial Mot. to Dismiss the Verified Compl. of Countercl. Pls. and Third-Party Pls.

[29] *See* Dkt. 22, Countercl. and Third Party Defs.' Opening Br. in Supp. of Partial Mot. To Dismiss the Verified Compl. of Countercl. Pls. and Third-Party Pls. ("Opening Br."); Dkt. 31, Countercl. and Third-Party Pls.' Br. in Opp'n to Partial Mot. to Dismiss ("Ans. Br."); Dkt. 38, Countercl. and Third Party Defs.' Reply in Further Supp. of Partial Mot. to Dismiss the Verified Compl. of Countercl. Pls. and Third-Party Pls. ("Reply Br.").

the fraudulent inducement claim against Peri (Count I) seeking rescission as well as the unjust enrichment claim against the Company Holder defendants (Count II).[30]

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all well-pleaded factual allegations in the [c]omplaint as true," and "draw[s] all reasonable inferences in favor of the plaintiff . . . ."[31] "[E]ven vague allegations are 'well-pleaded' if they give the opposing party notice of the claim[.]"[32] The court is neither required to "accept conclusory allegations unsupported by specific facts, nor . . . draw unreasonable inferences in the plaintiff's favor."[33] The Court denies the

---

[30] Initially, Movants also sought dismissal of Count III, arguing in their opening brief that the Merger Agreement's Exclusive Remedy Provision (Section 11.08) barred the breach of contract claim. Opening Br. at 12. Based on the parties' briefing and oral argument, the parties now appear to agree that the relief sought by Count III is confined to the Holdback Amount and interest, and is therefore not barred by the Exclusive Remedy Provision. *See* Ans. Br. at 15; Reply Br. at 10–11; Dkt. 60, Tr. of Oral Argument on Countercl. Def.'s and Third-Party Defs.' Partial Mot. to Dismiss and Defs.'/Countercl. Pls.' and Third-Party Pls.' Mot. for Disposition of Privilege Dispute ("Oral Arg. Tr.") at 26–29.

Movants further sought dismissal of Count III's assertion that the Company Holders breached Section 2.07 of the Merger Agreement by failing to pay "a $762,597 Parent Adjustment." Opening Br. at 22. Movants seem to argue that this claim is barred because the $762,597 amount was subject to the parties' arbitration, but the argument was not well developed in briefing or at argument. *See id.*; Ans. Br. at 8–9; Oral Arg. Tr. at 28–29. The Court denies the motion on this theory without prejudice to Movants' ability to argue that issues or amounts subject to arbitration cannot be recovered in this action.

[31] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[32] *In re General Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006).

[33] *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009).

8

motion "unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[34]

## A. The Request for Rescission (Count I)

Count I of the Third-Party Complaint "request[s] that the Court rescind the Merger and order [Movants] to return all consideration received in connection with the Merger, plus interest."[35] Movants argue that each Company Holder is indispensable to a request for rescission,[36] and because Holdco and TA did not join each of the Company Holders as parties, Count I's request for rescission must be dismissed under Court of Chancery Rule 19.[37]

Court of Chancery Rule 19 establishes a multi-step test for determining whether absent persons are necessary or indispensable to pending litigation. First, evaluating the criteria set forth in Rule 19(a), "the court must determine whether an absent person should be party to the litigation."[38] If the absent persons should be joined, then the court determines whether joinder is feasible.[39] If joinder is feasible,

---

[34] *Cent. Mortg.*, 27 A.3d at 536.

[35] Third-Party Compl. ¶ 89.

[36] *See* Opening Br. at 7.

[37] *See* Opening Br. at 7–11. Movants argument is in essence an argument for dismissal pursuant to Court of Chancery Rule 12(b)(7) for failure to join a party under Court of Chancery Rule 19.

[38] *Makitka v. New Castle Cty. Council*, 2011 WL 6880676, at *2 (Del. Ch. Dec. 23, 2011).

[39] *Id*.

9

Rule 19(a) "directs the Court to order the joinder[.]"[40] If joinder is not feasible, then Rule 19(b) calls for a "balancing test whereby the Court must determine whether the action can equitably proceed without the absent party. Where the Court finds that the action cannot so proceed, the absent party is regarded as 'indispensable' and the action must be dismissed."[41]

Turning to the first step, Rule 19(a) describes the criteria for regarding a party as necessary for a full adjudication.[42] A person should be a party to the litigation if: "(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest . . . ."[43]

Both of the Rule 19(a) criteria are easily met. On the face of the Third-Party Complaint, Holdco and TA seek to rescind the Merger Agreement.[44] This is extreme relief, which cannot be accomplished absent all parties to the agreement.[45] Also, the

---

[40] *Council of Civic Orgs. of Brandywine Hundred, Inc. v. New Castle Cty.*, 1991 WL 279374, at *2 (Del. Ch. Dec. 26, 1991).

[41] *Id.*

[42] *Id.*

[43] Ct. Ch. R. 19(a).

[44] Third-Party Compl. ¶ 89.

[45] *See generally Elster v. Am. Airlines, Inc.*, 106 A.2d 202, 204 (Del. Ch. 1954) ("All parties to a contract sought to be cancelled are indispensable parties to the suit for cancellation unless it is obvious that one not joined has no interest whatsoever in the subject matter of the suit."); *Strassburger v. Earley*, 752 A.2d 557, 578 (Del. Ch. 2000) (holding that a

10

Company Holders, as recipients of consideration from the merger,[46] have interests relating to the subject of the action, the requested rescission of the merger.[47] Disposition of the action without the Company Holders may impair or impede their ability to protect their interests.

Holdco and TA contend that joinder of the Company Holders is unnecessary Because Representative will "fully represent the interests of the Company Holders[.]"[48] Holdco and TA argue that Representative cannot use its status as representative for the Company Holders as both a sword and a shield by claiming the ability to pursue claims for recovery on behalf of the Company Holders, but rejecting the ability to defend against claims seeking recovery from the Company Holders.[49]

---

transaction could not be rescinded because a party to the transaction was not a party the lawsuit); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983) ("Numerous cases hold that 'an action seeking rescission of a contract must be dismissed unless all parties to the contract, and others having a substantial interest in it, can be joined.") (citation omitted); *Bonoff v. Troy*, 589 N.Y.S.2d 340, 341 (1st Dept. 1992) ("[P]laintiff's failure to join all of the signatories to the 1975 Shareholder Agreements as necessary parties to the action precludes partial rescission.") (internal citation omitted); 12A C.J.S. *Cancellation of Inst.* § 115 ("All parties to a contract or agreement are necessary parties to an action to rescind it.").

[46] Third-Party Compl. ¶ 89.

[47] For the same reasons, Holdco and TA's alternative argument, that they should be entitled to obtain rescission from the five individual defendants only, fails.

[48] Ans. Br. at 13.

[49] *Id.* at 4–6.

11

This argument misses the mark. The Representative's authority is defined by contract. The Merger Agreement limits the scope of Representative's authority to "any matter relating to or under this [Merger] Agreement."[50] Count I for fraudulent inducement, through which Holdco and TA seek rescission, claims that the Merger Agreement is void as a result of the alleged fraud. Holdco and TA cannot seek a remedy outside of the scope of the Merger Agreement from Representative alone, when Representative's authority is limited to matters relating to or arising under the four corners of that agreement. Holdco and TA cite to no case interpreting a similar provision as expressly empowering a stockholder representative to defend a claim for rescission, reach into the pockets of each Company Holder, or otherwise compel each Company Holders to return the consideration each Company Holder received.[51]

---

[50] Merger Agreement § 11.09(a).

[51] Citing *Shareholder Representative Services LLC v. Gilead Sciences, Inc.*, 2017 WL 1015621 (Del. Ch. Mar. 15, 2017), Holdco and TA contend that Representative has in the past defended against such requests for relief, without joinder of stockholders. This argument goes too far. Ans. Br. at 7–8. In *Gilead Sciences*, Representative defended against, on behalf of former security holders of an acquired company, a single counterclaim for declaratory relief regarding milestone payments under a merger agreement—not a request for rescission or even damages from the security holders. 2017 WL 1015621, at *15.

Holdco's and TA's citations to *Ballenger v. Applied Digital Solutions, Inc.*, 2002 WL 749162 (Del. Ch. Apr. 24, 2002), and *Mercury Systems, Inc. v. Shareholder Representative Services LLC*, 2014 WL 591218 (D. Mass. Feb. 14, 2014), also do not change this Court's analysis. Ans. Br. at 7–8. In *Ballenger*, the stockholder representatives *asserted* claims for breaches of a merger agreement and related agreement; the absent parties did not face the possibility of having to repay the merger consideration. 2014 WL 591218, at *1–4. In *Mercury Systems*, Representative only defended against claims for which the "sole recourse available" was an "indemnity escrow account which, by [the

12

Because the Company Holders should be joined, Rule 19(a) directs the Court to determine whether they can be joined. Here, it appears that the unnamed Company Holders were named as defendants in the prior purchase price adjustment litigation filed by Holdco in this Court,[52] suggesting that they can be named as defendants in this litigation.[53]

The Court thus dismisses Holdco's and TA's request for rescission of Count I without prejudice to permit them to join the currently-unnamed Company Holders as third-party defendants.[54]

### B. The Unjust Enrichment Claim (Count II)

Count II of the Third-Party Complaint asserts a claim of unjust enrichment against the Company Holder defendants based on Peri's alleged fraud.

---

acquirer's] own admission, [was] funded to the full extent of any indemnification amount it may be owed." 2014 WL 591218, at *1.

[52] *See* C.A. No. 2018-0071-AGB, Dkt. 1, Verified Compl. (Del. Ch. Jan. 30, 2018).

[53] Although the Court need not undertake the balancing test called for by Rule 19(b) because joinder seems feasible, that test weighs against Holdco and TA. If the absent Company Holders cannot be named as defendants, it would inequitable to proceed with a claim that might require them to return the merger consideration.

[54] *See In re Nat'l Auto Credit, Inc. S'holders Litig.*, 2003 WL 139768, at *16 (Del. Ch. Jan. 10, 2003) (dismissing application to rescind agreement pursuant to Court of Chancery Rule 19); *Elster*, 106 A.2d at 204 (granting motion to dismiss based on failure to join indispensable parties, but providing plaintiffs an opportunity to join those indispensable parties as defendants).

13

Citing *Metcap Securities LLC v. Pearl Senior*,[55] Movants contend "Holdco and TA are not entitled to unjust enrichment because the Merger Agreement governs the parties' relationship and provides an adequate remedy at law[.]"[56]

Under Delaware law, "[i]f a contract comprehensively governs the parties' relationship, then it alone must provide the measure of the plaintiff's rights and any claim of unjust enrichment will be denied."[57] But the "contract itself is not necessarily the measure of [the] plaintiff's right where the claim is premised on an allegation that the contract arose from wrongdoing (such as breach of fiduciary duty or fraud) or mistake and the [defendant] has been unjustly enriched by the benefits flowing from the contract."[58] And at the pleadings stage, the mere existence of a breach of contract claim will not automatically foreclose pursuit of an unjust

---

[55] 2009 WL 513756, at *5 (Del. Ch. Feb. 27, 2009), *aff'd*, 977 A.2d 899 (Del. 2009) (TABLE).

[56] Opening Br. at 14–15.

[57] *RCS Creditor Tr. v. Schorsch*, 2018 WL 1640169, at *7 (Del. Ch. Apr. 5, 2018) (internal quotation marks omitted) (quoting *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009)).

[58] *Id.*; *see also Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *27 (Del. Ch. Nov. 26, 2014) ("If the validity of that agreement is challenged, however, claims of unjust enrichment may survive a motion to dismiss."); *Haney v. Blackhawk Network Hldgs., Inc.*, 2016 WL 769595, at *9 (Del. Ch. Feb. 26, 2016) ("Although merely suggesting that the validity of a contract may be in doubt is insufficient to support a claim for unjust enrichment, a claim that the underlying agreement is subject to rescission due to fraudulent conduct or omissions is sufficient to do so.").

enrichment claim.[59]  "[W]here a plaintiff pleads a right to recovery 'not controlled by contract' or where "it is the [contract], itself that is the unjust enrichment[,]" courts will permit unjust enrichment claims to proceed.[60]

In this case, Holdco and TA allege that the Merger Agreement was the product of fraud.  Holdco and TA assert that they were "fraudulently induced" to "pay a purchase price for Radixx that was in excess of a true and fair valuation of Radixx"[61] and that the Company Holders were unjustly enriched by the monies they received from the merger "in excess of a true and fair valuation of Radixx at the time the Merger closed."[62]  Because Holdco and TA have challenged the validity of the Merger Agreement,[63] the Merger Agreement does not preclude the unjust enrichment claim from proceeding.[64]

---

[59] *See also Haney*, 2016 WL 769595, at *7, *9 (Del. Ch. Feb. 26, 2016) (allowing breach of contract and unjust enrichment claims to proceed on a motion to dismiss).

[60] *Great Hill*, 2014 WL 6703980, at *27 (internal footnotes omitted).

[61] Third-Party Compl. ¶¶ 91–92.

[62] *Id.* ¶¶ 93–97.

[63] Representative and the Company Holder defendants have not moved to dismiss the fraudulent inducement claim set forth in the Third-Party Complaint, except to the extent it requests rescission.  Accordingly, this decision assumes that the Third-Party Complaint adequately pleads fraudulent inducement against Peri.

[64] The Exclusive Remedy Provision provided in Section 11.08 of the Merger Agreement does not preclude the unjust enrichment claim.  *See JCM Innovation Corp. v. FL Acq. Hldgs., Inc.*, 2016 WL 5793192, at *7 (Del. Super. Sept. 30, 2016) ("Logically, the Court cannot, at this stage in the proceedings, use a provision of the Agreement to dismiss JCM's unjust enrichment claim that must rely on the theory there is no valid Agreement.").

Movants further contend the unjust enrichment claim should be dismissed because it seeks to hold stockholders personally liable for Radixx's alleged wrongs.[65] Under Delaware law, however, "[r]estitution is permitted even when the defendant retaining the benefit is not a wrongdoer."[66] As the Delaware Supreme Court has stated, "[r]estitution serves to deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses."[67] Accordingly, any request for restitution does not require dismissal of the unjust enrichment claim.[68]

---

[65] Opening Br. at 20.

[66] *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999) (internal quotation marks omitted).

[67] *Id.* at 232–33.

[68] Movants also argue that by seeking to disgorge merger consideration from each Company Holder, Count III impermissibly ignores corporate formalities, and therefore should be dismissed. Movants cite to *McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*, 339 F.3d 1087 (9th Cir. 2003), in which an acquirer argued that merger consideration was artificially inflated by accounting improprieties. The Court declined to permit the merger to recover from the stockholders who were theoretically unjustly enriched by merger consideration, holding that the stockholders were not parties nor third-party beneficiaries to the merger agreement, and that an adequate remedy of law precluded the unjust enrichment claim. In this case, the Company Holders are each parties to the Merger Agreement. Further, it is premature at this stage to evaluate the availability of other legal remedies. I deny dismissal of the unjust enrichment claim on this basis.

16

## III. CONCLUSION

For the foregoing reasons, Count I's request for rescission is dismissed without prejudice. The motion for partial dismissal of the Third-Party Complaint is otherwise denied.

**IT IS SO ORDERED.**